USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___________
DATE FILED: 7/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOISES CHAVEZ MARTIN,

Petitioner,

-against-

WILLIAM JOYCE, in his official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement; JUDITH ALMODOVAR; in her official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Director, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

26 Civ. 4699 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Moises Chavez Martin, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet., ECF No. 1.[1] Chavez Martin contends that his Fifth Amendment right to due process was violated when he was detained on June 2, 2026, while walking home with his partner and two young children. *See id.* ¶ 2. Chavez Martin seeks immediate release. *Id.* ¶ 8. For the reasons stated below, the petition is GRANTED.[2]

---

[1] Although Chavez Martin is now represented by counsel, *see* ECF No. 18, his petition was filed by his partner, Bella Nohely Mendez Vasquez, acting *pro se* as a next friend. *See* Pet. at 1. The petition includes multiple documents all filed together. In this order, citations to individual paragraphs of Chavez Martin's petition refer to the paragraphs enumerated in the petition, which begins at page 5 of ECF No. 1.

[2] Having reviewed the petition and the government's opposition and accompanying exhibits, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require").

**BACKGROUND**

Moises Chavez Martin is a 28-year-old native and citizen of Guatemala who has resided continuously in the United States since December 2023. Pet. ¶ 9; Opp. Mem. at 5, ECF No. 11. He has two children, one of whom is a United States citizen; he and his other child, a seven-year-old daughter, have applied for asylum. *See* Pet. ¶¶ 22, 24, 36, 56.

Although Chavez Martin has been living in the United States since 2023, he first entered the United States almost a decade beforehand, in 2014. *See* Opp. Mem. at 6. On April 12, 2014, a U.S. Border Patrol agent encountered Chavez Martin near Douglas, Arizona. *Id*. That same day, the government issued an expedited order of removal under 8 U.S.C. § 1225(b)(1), and Chavez Martin was deported to Mexico. *Id.*; ECF No. 9-2 (removal order dated April 12, 2014). Three days later, Chavez Martin was again encountered near Douglas, Arizona; the government issued another expedited removal order dated April 16, 2014, and Chavez Martin was again deported. *See* Opp. Mem. at 6; ECF No. 9-4 (removal order dated April 16, 2014).[3]

At some point thereafter, Chavez Martin reentered the United States. Opp. Mem. at 6; Miller Decl. ¶ 6, ECF No. 10. On December 18, 2015, he was arrested in Maricopa County, Arizona, and charged with burglary, theft-related offenses, and possession of a weapon by a prohibited person. Miller Decl. ¶ 6. The government states that Chavez Martin was convicted of second-degree burglary; however, the criminal records that the government submitted to the Court show a conviction for criminal trespass in the third degree. *Compare* ECF No. 9-5 at 1, 7 (state court criminal records), *with* Opp. Mem. at 8 *and* Miller Decl. ¶ 6. Chavez Martin was sentenced to eighteen months' probation. ECF No. 9-5 at 2, 7. One day after his arrest, ICE "encountered"

[3] It appears that Chavez Martin used an alias both times he was encountered in the United States in April 2014. *See* ECF No. 9-2, ECF No. 9-4; ECF No. 9-5 at 7 (Arizona state criminal court records reflecting use of the alias). Chavez Martin does not challenge the government's representation that the April 12 and 16 removal orders applied to him. *See generally* Reply, ECF No. 21.

Chavez Martin at the Maricopa County jail and identified him as a "Guatemalan national subject to reinstatement of removal." Opp. Mem. at 7. ICE then "processed" and removed him to Guatemala on March 11, 2016, by reinstating his first order of removal dated April 12, 2014. *See* ECF No. 9-11 (notice of intent to reinstate order of removal).

On December 26, 2023, U.S. Customs and Border Patrol encountered Chavez Martin in El Paso, Texas, with his daughter. *See* Miller Decl. ¶ 8; Pet. ¶¶ 21–22. Chavez Martin was issued a Notice to Appear ("NTA"), which charged him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and released on an order of release on recognizance, but the government never prosecuted the case. *See* Miller Decl. ¶ 8; Form I-213 at 3, ECF No. 9-7. Chavez Martin then filed an application for asylum on January 20, 2025. *See* Form I-213 at 4.

On June 2, 2026, Chavez Martin was walking home with his family in a residential neighborhood in Staten Island when he was "approached by several ICE officers who had been, until that point, sitting in their vehicles." Pet. ¶¶ 26–27. The officers "blocked off his way with vehicles, exited their cars, circled [his] family, and slammed him against the wall in front of his children." *Id.* ¶ 27. Chavez Martin reports that ICE officers told him "that they had a judicial warrant, calling it an 'orden judicial,' for his arrest," and "showed [Chavez Martin] and his family a picture" on an ICE officer's phone. *Id.* ¶ 31. The declaration of Jokaira Miller, an ICE Deportation Officer, does not provide any other details concerning the circumstances of Chavez Martin's arrest. *See generally* Miller Decl.

The government represents that Chavez Martin was arrested on June 2, 2026, pursuant to a Form I-205 arrest warrant. *See* Opp. Mem. at 14. The Form I-205, although signed June 2, 2026, is dated June 3, 2026. *See* Form I-205, ECF No. 9-8; Sur-Reply at 8, ECF No. 25. The government also states that Chavez Martin was detained on June 2 pursuant to 8 U.S.C. § 1231(a)(2)(A), which

mandates detention when a noncitizen is subject to a reinstated removal order. *See* Opp. Mem. at 11. But the Form I-871 Notice of Intent/Decision to Reinstate Removal Order (the "NOI" or "Form I-871") is dated June 3, 2026. *See* Form I-871, ECF No. 9-9.

Although the government claims that it "served the warrant and notice of reinstatement of removal on the same day as the arrest, during post-arrest processing," it submitted no supporting evidence. Opp. Mem. at 14.[4] The Miller declaration does not state that ICE served both a Form I-205 warrant and a NOI on Chavez Martin on June 2. *See generally* Miller Decl. Nor does the declaration report that ICE "compl[ied] with the governing regulations to provide [Chavez Martin] with notice" as the government claims. Opp. Mem. at 14; *cf., generally*, Miller Decl.

On June 3, 2026, Chavez Martin filed his petition. *See* Pet. That same day, ICE transferred Chavez Martin from New York to the Moshannon Valley Processing Center in Philipsburg, Pennsylvania. *See* Gov't Ltr. at 2, ECF No. 8. Following the Court's inquiry into whether it had jurisdiction over the petition, *see* ECF No. 22, the parties agreed that Chavez Martin "was physically located within the jurisdiction of the Southern District of New York . . . at the time the petition was filed," and that the petition is, therefore, properly before this Court, ECF No. 23. The Court ordered Chavez Martin's return to this district, which was accomplished by July 15, 2026. *See* ECF Nos. 24, 26.

**DISCUSSION**

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco*

[4] In its memorandum, the government cites "*id.*" to support its claim that the documents were served on Chavez Martin on June 2, 2026. But the citations immediately preceding the government's use of "*id.*" (which is used in legal writing exclusively to cite the immediately preceding authority) refer to the Code of Federal Regulations, the documents themselves (which are dated June 3), and to portions of the Miller declaration that are nonexistent. *Compare* Opp. Mem. at 14 (citing "Miller Decl. ¶¶ 12, 13"), *with* Miller Decl. at 4–5 (containing no paragraph 12 or 13).

*Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.*

The government argues that Chavez Martin was lawfully detained under 8 U.S.C. § 1231(a)(2)(A), which states that "[d]uring the removal period, the Attorney General shall detain the [noncitizen]." *See* Opp. Mem. at 13. Section 1231 allows the government to "reinstate" an order of removal if the government "finds that [the noncitizen] has reentered the United States illegally after having been removed." 8 U.S.C. § 1231(a)(5). Once a removal order is reinstated, detention of the noncitizen is mandatory "during the removal period," *see id*. § 1231(a)(2)(A), and the noncitizen "shall be removed under the prior order," *id.* § 1231(a)(5). The government contends that the reinstatement of Chavez Martin's April 12, 2014 removal order justified his detention on June 2. *See* Opp. Mem. at 11.

The problem is that Chavez Martin's removal order was reinstated on June 3—the day *after* his arrest. *See* Form I-871. Courts in this Circuit have held that, when the government only issues a Form I-871 after detaining a noncitizen, the "purported basis for [the noncitizen's] arrest and detention [is] invalid." *Cartagena Jaco v. Blanche*, No. 26 Civ. 4798, 2026 WL 1786007, at *4 (S.D.N.Y. June 22, 2026); *see Rene Orlando de la Rosa Izaguirre v. Blanche*, No. 26 Civ. 2911, 2026 WL 2023200, at *12 (E.D.N.Y. July 13, 2026); *see also Martinez v. McAleenan*, 385 F. Supp. 3d 349, 368 (S.D.N.Y. 2019) (requiring the government to follow particular procedures before detaining someone based on a reinstated removal order). The logic is uncomplicated: where ICE purports to have arrested a noncitizen "pursuant to" a statute that confers authority for ICE to detain a noncitizen only once ICE makes a specific "find[ing]," 8 U.S.C. § 1231(a)(5); 8 C.F.R.

§ 241.8(a), but where the finding was made after the noncitizen's detention, ICE's hollow appeal to that statutory authority must be rejected.

This is not the only problem with the government's purported exercise of its authority under 8 U.S.C. § 1231(a)(2)(A). The record also reveals a lack of compliance with § 1231's implementing regulations, which require, *inter alia*, that an immigration officer make certain determinations "before concluding that a noncitizen is subject to reinstatement of a removal order." *See Cartagena Jaco*, 2026 WL 1786007, at *2 (S.D.N.Y. June 22, 2026); 8 C.F.R. § 241.8. Under 8 C.F.R. § 241.8, when an immigration officer is "establishing whether a [noncitizen] is subject to" reinstatement of removal, the officer "shall determine . . . : (1) "[w]hether the [noncitizen] has been subject to a prior order of removal . . ."; (2) "[t]he identity of the [noncitizen], *i.e.*, whether the [noncitizen] is in fact [a noncitizen] who was previously removed . . ."; [and] (3) [w]hether the [noncitizen] unlawfully reentered the United States." *Id.* § 241.8(a)(1)–(3). In making the final determination, the officer must "consider all relevant evidence, including statements made by the [noncitizen] and any evidence in the [noncitizen's] possession." *Id.* § 241.8(a)(3). Furthermore, the regulations provide that the officer "must obtain the prior order of . . . removal" in deciding whether reinstatement applies. *Id.* § 241.8(a)(1). These are not mere formalities. As the Second Circuit has held, given the "lack of a formal hearing" afforded to noncitizens subject to reinstated orders of removal, these requirements form important "procedural safeguards" ensuring that the reinstatement process is not implemented in an arbitrary manner. *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149–50 (2d Cir. 2008) (emphasizing 8 C.F.R. § 241.8's "procedural safeguards" in the context of a constitutional due process challenge to the reinstatement of removal under 8 U.S.C. § 1231(a)(5)); *Izaguirre*, 2026 WL 2023200, at *12 (characterizing § 241.8's requirements as "minimal due process protections" afforded to noncitizens in expedited removal proceedings).

And "where 'the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" *Funes v. Francis*, 810 F. Supp. 3d 472, 499 (S.D.N.Y. 2025) (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)); *see also Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991) ("The notion of fair play animating th[e] [Fifth] [A]mendment precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit.").

In sum, the regulations require that an immigration officer make a determination that § 1231 applies to a noncitizen "before or even at the time of [] detention." *Cartagena Jaco*, 2026 WL 1786007, at *2–3; *Izaguirre*, 2026 WL 2023200, at *11 ("[T]he proper established procedure is for the government to reinstate an order of removal and *then* issue a Form I-205 arrest warrant to carry out removal." (emphasis in original)); *Martinez*, 385 F. Supp. 3d at 368. Here, no such determination was made before Chavez Martin was detained on June 2. Indeed, the Miller Declaration merely states that "ICE arrested Petitioner pursuant to a [Form I-205]" during a "targeted enforcement operation," and "detained him pursuant to . . . 8 U.S.C. § 1231(a)." Miller Decl. ¶ 10. The Court, therefore, cannot find that Chavez Martin's removal order was reinstated prior to his arrest and detention. Nor can the Court conclude that an ICE officer made any of the pre-detention determinations required under 8 C.F.R. § 241.8(a). *See id.*

Acknowledging that "ICE has not provided an explanation for the inconsistency between the June 3 date at the top of the [Form I-205 warrant] and the June 2 signature date [on the warrant]," the government claims that "ICE served all documents during post-arrest processing" and that the regulations do not require the government to serve the Form I-205 during an arrest. *See* Sur-Reply at 8. But this argument is a red herring, as it confuses the question of service of the

Form I-205 warrant with the question of whether the warrant and a reinstated removal order was issued prior to Chavez Martin's detention. *See id.*

Given the paucity of evidence regarding Chavez Martin's detention, and the fact that the NOI is dated *after* his detention on June 2, the government leaves the Court with one conclusion: there was no legal justification for Chavez Martin's arrest and detention on June 2. *See Cartagena Jaco*, 2026 WL 1786007, at *4 ("[T]he fact that no reinstatement had been issued before Cartagena Jaco's arrest renders the purported basis for his arrest and detention invalid."); *Izaguirre*, 2026 WL 2023200, at *12–13. "Ruling otherwise would allow ICE to arrest individuals merely on suspicion of unlawful presence, then seek statutory confirmation of that determination after the fact." *Cartagena Jaco*, 2026 WL 1786007, at *4.[5]

Having concluded that Chavez Martin was not arrested or detained under the authority conferred by 8 U.S.C. § 1231—or any authority at all—the Court concludes that his detention violates the Due Process Clause. *See* Pet. ¶¶ 72–78; *Izaguirre*, 2026 WL 2023200, at *12; *Cartagena Jaco*, 2026 WL 1786007, at *3–4; *Martinez*, 385 F. Supp. 3d at 363–64; *see also Valdez*, 803 F. Supp. 3d at 219 (holding that detention with "no process at all, much less prior notice," violated due process).

The Court next turns to the question of remedy. The "'typical remedy' for 'unlawful executive detention . . . is, of course, release.'" *Diallo v. Joyce*, 817 F. Supp. 3d 202, 210 (S.D.N.Y. 2025) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)); *see also Izaguirre*, 2026 WL 2023200, at *14 ("Seeing as Respondents were not authorized to arrest Petitioner in the first

[5] To the extent that the government seeks to argue that its belated execution of a NOI renders Chavez Martin's detention lawful, the Court disagrees. Where a petitioner was first unlawfully detained, "even if [his detention] has been converted to a lawful one," the Court is not barred from "exercis[ing] an appropriate equitable remedy through the writ" of habeas corpus. *Martinez*, 385 F. Supp. 3d at 366; *see also Inestroza Carbajal v. Frazier*, No. 26 Civ. 2778, 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026) ("[A]n executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards.")

place, but Petitioner has nonetheless spent nearly two months detained, release is appropriate here.”). The government has offered no suggestion that a departure from this remedy would be appropriate, and the Court sees none. *See generally* Opp. Mem.; Sur-Reply. [6]

**CONCLUSION**

For the reasons stated above, the petition at ECF No. 1 is GRANTED. The government is hereby ORDERED to release Chavez Martin, without electronic monitoring, including but not limited to GPS monitoring. The government must release Chavez Martin with all of his belongings that are in its possession, including but not limited to identification cards, clothing, and money. The government shall confirm compliance with these directives in a filing on the docket by **5:00 p.m.** on **July 31, 2026.**

The Court further orders that the government shall not redetain Chavez Martin without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain him. Should the government seek to redetain Chavez Martin, they are directed to file a motion with this Court that justifies a lawful arrest. *See, e.g.*, *Izaguirre*, 2026 WL 2023200, at *14.

SO ORDERED.

Dated: July 30, 2026
New York, New York

ANALISA TORRES
United States District Judge

[6] Chavez Martin also claims that his detention violates the Immigration and Nationality Act and its implementing regulations, as well as other constitutional provisions. *See* Pet. ¶¶ 79–91. Because the Court decides the petition on Fifth Amendment grounds, it does not evaluate the merits of Chavez Martin’s other claims.